UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

-vs-                             Case No. 16-cr-20696
                                   Hon.  Stephen J. Murphy, III

CHARLES MASON,

     Defendant.

_____/

## MOTION TO AMEND PRE-SENTENCE REPORT AND FOR DEFENDANT TO BE APPOINTED COUNSEL

Now comes Defendant, CHARLES MASON, by and through, Mark H. Magidson, and in support of his Motion To Amend the Presentence Investigation Report and to Appoint Counsel, states unto this Honorable Court as follows:

1.  Defendant was charged in a multi- count Superseding Indictment, with multiple counts of  Use of an Unauthorized Access Device, contrary to 18 U.S.C. §1029(a)(2); , Aggravated Identity Theft, contrary to 18 U.S.C. §1028A(a)(1); Possession of Device Making Equipment, contrary to 18 U.S.C. §1029(a)(4); Possession of Fifteen or More Unauthorized Access Devices, Contrary to 18 U.S.C. § 1029(a)(3); Production of a Counterfeit Access Device, contrary to 18 U.S.C., §1029(a)(1); False Statement Made to a Department of the United States  and Conspiracy to Possess Fifteen or More Counterfeit or Unauthorized Access Devices, contrary to 18 U.S.C., §1029(a)(3),(b)(2).

1

2. The facts that gave rise to this Indictment arose when investigators determined that Mr. Mason was involved in a schemes to acquire stolen credit card accounts and the make a gift cards or credit cards and fraudulently use the same.

3. On May 24 2017 Mr. Mason pled guilty to 9 of the 11 counts, including two counts of aggravated identity theft that carries a mandatory minimum sentence of 24 months to run consecutive to the other counts.

4. Following his plea of guilty, Mr. Mason terminated his counsel and subsequently new counsel, the undersigned, was appointed to represent him. When new counsel obtained the Presentence Report, he reviewed it with Defendant who advised that he did not agree with the scoring of the guidelines, notwithstanding the fact that his Rule 11 plea agreement states that the parties do not dispute the guidelines.

5. The Pre-sentence report did not mention that Mr. Mason had a chronic problem with marijuana.

6. Because he was focused on the guideline scoring, he did not notice or address the fact that the Report did not make reference to his drug problem; he did not admit the same to himself.

7. However, during sentencing, the issue of why he needed cash came up and it was revealed that he had initially became involved in criminal behavior to enable him to purchase marijuana which he used daily.

8. At the conclusion of the sentencing this Court did recognized that Mr. Mason would benefit from the drug program and on page two the Judgment of Sentence states:

The court makes the following recommendations to the Bureau of Prisons:

- Participation in the Residential Drug Abuse Program (RDAP)
- Placement at Milan Correctional Institution. (FCI)
- Participation in the Inmate Financial Responsibility Program;
- Participation in cognitive behavioral therapy and psychological counseling. (See Exhibit A)

9.  Counsel did speak with the probation officer who prepared the report and she indicated that she could not change/amend the report unless there was a court order.

10. Counsel contacted the assistant U.S. attorney and left a voice mail message on or about June 16, 2020 seeking concurrence in the relief sought, but as of the date of this filing, there was no response.

11. The probation officer noted that he did not indicate that he had a drug problem and therefore she was reluctant to change the report, however when it comes to addictions, people  who have addictions are frequently are in denial.[1]

12. The People who know Mr. Mason best corroborate and confirm that he has had a significant marijuana addiction.

13. His grandmother Marine Mims received custody of Mr. Mason when he was 45 days old after his mother, who was addicted to cocaine, abandoned him in a halfway house. (See Exhibit B, Statement of Marine Mims).

---

[1] It is not uncommon for an addict to deny they have a problem. Denial is a powerful survival mechanism that enables the addict to continue using and thus continue to avoid the truth.

Denial manifests in the addicted person in numerous ways. One such way is justification of the addictive behavior. Such justifications might include:

- *I can stop whenever I want, I just don't want to. I'm in control!*
- My drug use is not affecting anyone but me.
- If I were an addict, would I still have (a job, family, nice house, etc.)?
- I've never been arrested.
-  only drink/drug after 5 pm and/or socially.
- I've never used hard drugs.
- My kids have never seen me high.

journeypureriver.com › Addiction Articles

14. Beginning when Mr. Mason was between 12 or 13 years old, Ms. Mason noticed that he had behavioral problems in school and also noticed that he began to use and smoke marijuana. (Par. 5, Exh. B)

15. She noticed that Charles would sell his items that Ms. Mason had given him because he would use that money the purchase marijuana.

16. He would not smoke in her presence but she smelled it on him nearly every day particularly when he was a teenager 17.18, or 19.

17. She noted that that it was difficult since the marijuana affected his personality and punctuality.(Par 9, Exhibit B)

18. Because he has always "high" she states that he got numerous tickets, lost his license, cost her more in insurance so she had to take the car from him. (Par. 10, Exhibit B).

19. Finally when he was about 21 she finally had to "put him out" because he was constantly high and she felt he was disrespecting her home. (Par. 11, Exh. B)

20. MS. Mason believes that he needs drug therapy and counseling to wean him of his habit and she believes without such treatment he could very well relapse upon release..

21. Margareta Hopkins is the sister of Mr. Mason, but only has known him since 2012 because they had different mothers. (See Exhibit C.)

22. She notes that Mr. Mason had many dreams and aspirations , but "he seemed to lose focus and motivation due to his constant smoking of marijuana.) Exhibit C, par. 4)

23. Since she has known him, he was always high and it interfered with his ability to do well in school, stayed focused on jobs, or even play basketball, his number one dream. (See Exhibit C, par.

24. Every time she saw her brother, her was getting high, and although it was "only marijuana" she thought it impacted his life by focusing more on the "streets" rather than focusing on school or other important matters. (See Exhibit C, par. 8)

25. Ms. Hopkins believes that her brother would greatly benefit from substance abuse therapy because without the same she is fearful of relapse.

26. Julia Lamb is Mr. Mason's aunt, and while she was older and did not live with her mother , Marine Mason, when Charles was brought in to the household, she nevertheless had substantial contact with Mr. Mason over the years. (Exhibit D

27. She noticed that when he was 17 or 18 he was high on marijuana all the  time and saw the effects and that when he was 13 or 14 he was arrested by the juvenile authorities for stealing bikes which she suspected he did to fund his marijuana purchases.

28. She noted that the "family was relieved when the judge recommended that he get drug treatment and therapy). (See Exhibit D, par. 10)

29. She believes that his marijuana problem contributed, in part,  to his criminal case.

30.  Lamont Mason is Charles Masson's younger brother and was similarly raised by his grandmother.

31. He five years younger and it was not until he was older that he became aware that his older brother used not only marijuana but also used lean.[2] (Exhibit E, Par 4)

32. Lamont recalls his brother Charles acting sluggish and slurring words, which are the side effects of the drug cocktail, lean. (par 5,6, Exhibit E.)

33. He recalls one time when Charles came home and had the "munchies" and looked for his hidden kit kats that he would chow down late at night, but Lamont had found them first and ate them and he recalls Charles got mad at him. (par . 8, Exhibit E).

34. Like his other family members, he believes Charles would benefit by participating in the drug program.

35. It is clear from the testimonials that despite Mr. Mason's minimizing his drug problem with the probation officer he did in fact have a substantial problem, which the court recognized in recommending to the BOP to allow him into the RDAP program.

---

[2] Lean is an illicit substance made with codeine cough syrup, soda, and hard candy. Codeine is derived from the opium poppy plant (similar to morphine) and is one of the weaker opioids. However, because it is still highly addictive and potentially damaging to the body. It's possible for an individual to develop a lean addiction in a relatively short period of time due to the way opioids short-circuit the brain's reward response system.
www.addictioncenter.com › opiates › codeine › lean-ad...

36. Based upon the representations made by his counselor at the BOP, he would be admitted into the program if the presentence report were amended to reflect his need for such treatment.

## II. LEGAL AUTHORITY

.

37. The remedy of a federal prisoner for correction of a variance between commitment and sentence as orally pronounced is by way of a motion brought in sentencing court and habeas corpus is not available. *Accardi v. Blackwell*, 412 F.2d 911 (5th Cir. 1969).

38. USCS Fed Rules Crim Proc R 36 provides:

> After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission

39. Here, defendant is not asking to change or modify the sentence but is only requesting the relief contained in the Judgment of sentence. This Court has the authority to correct mistakes or oversights. Here, there was such an oversight and Defendant is requesting that the PSI be amended to reflect his reality.

40. In order for Defendant to ably and capably to pursue this relief, he is seeking that he be appointed counsel in this matter.

Wherefore, for the foregoing reasons, Defendant respectfully requests that this court amend his presentence report to reflect that he has had a long history of drug abuse and that it be recommended that he be allowed to enter the RDAP program and to appoint counsel, either the undersigned counsel, or a referral to the Defenders' office.

Respectfully submitted,


By  */s/MARK H. MAGIDSON*
    MARK H. MAGIDSON (P25581)
    Attorney for Defendant Mason
    615 Griswold, Suite 810
    Detroit, MI 48226
    (313) 963-4311
    MMAG100@AOL.COM


## CERTIFICATE OF SERVICE

I, Mark H. Magidson, certify that on June    , 2020, I electronically filed the above

document, which resulted in the document being served electronically on all counsel of

record including, but not limited to:  Shane Cralle, Assistant U.S. Attorney and Lara M.

Catrell.

    */s/MARK H. MAGIDSON*
    MARK H. MAGIDSON (P25581)
    Attorney for Defendant Mason
    615 Griswold, Suite 810
    Detroit, MI 48226
    (313) 963-4311
    MMAG100@AOL.COM

# Exhibit

# A

DEFENDANT:     Charles, Mason
CASE NUMBER:   0645 2:16CR20696 (1)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

- 102 months on Counts 1, 3, 4, 7, 9, and 11 to run concurrent.
- 60 months on Count 8 to run concurrent to Counts 1, 3, 4, 7, 9, and 11
- 24 months on Counts 2 and 10 to run concurrent to each other but consecutive to all other counts

The Court waives the imposition of a fine, the costs of incarceration and the costs of supervision, due to the defendant's lack of financial resources.

☒   The court makes the following recommendations to the Bureau of Prisons:

     Participation in the Residential Drug Abuse Program (RDAP)
     Placement at Milan Federal Correctional Institution (FCI)
     Participation in the Inmate Financial Responsibility Program
     Participation in cognitive behavioral therapy and psychological counseling.

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐  at                ☐ a.m.   ☐ p.m.  on

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on
    ☐  as notified by the United States Marshal.
    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to

at _____, with a certified copy of this judgment.

                                    UNITED STATES MARSHAL

                                       By
                        DEPUTY UNITED STATES MARSHAL

# Exhibit

# B

## Statement of Marine Mason

The following statement is made by Marine Mason, and is true and accurate based upon your own personal, first-hand information.

1. I am the grandmother of Charles Mason and he has been in my custody since he was 45 days old.

2. My daughter, who is his mother, was pregnant with him in jail, addicted to crack cocaine.

3. When Charles was born, cocaine was detected in his system, and in the months and years that followed, he was a difficult child to raise, never content, frequent crying, refusal to eat and extremely hyper active

4. The doctors and counselors told me that it was more than likely due to him being a victim of a crack addicted mother.

5. He had constant behavioral problems in school, and when he became 12 or 13 years old, I noticed that he began to use and smoke marijuana.

6. When he was younger, at that age, he had no money to purchase these types of drugs so he resorted to stealing bicycles and selling gifts that I had given him such as games for his game boy.

7. I stopped purchasing him expensive gifts, and eventually, the juvenile authorities apprehended him for the bike theft; the problems with marijuana began when he was 12 or 13 years old and continued until the time of this arrest.

8. Although he would never smoke it in my presence, I could tell he smoked nearly every day because I could smell it on him, particularly when he began to be a teenager at the age of 17, 18 or 19 years old.

9. It was difficult for him to hold jobs, since the marijuana affected his personality and his punctuality, and for that reason the jobs he sought out were the midnight shift where there was a little supervision.

10. I had gotten him a car to travel back-and-forth to work but he soon accumulated many tickets for running red lights and similar moving violations which I believe was due to the fact that he was always high. Because of the high costs of

fines and insurance, I finally had to take the car away from him. I believe the marijuana contributed to this situation.

11. Finally, after he turned 21, I had to put him out of the house because he was constantly high on marijuana and I felt that since he was disrespecting my household, and since he was now a man, he would have to live elsewhere.

12. Although I am not a doctor or scientist, I firmly believe that he is more susceptible to drugs, marijuana in particular, because he was born with cocaine in his system.

13. I believe that he needs drug therapy and counseling to wean him of this habit that he has had since he was 12 or 13 years old. I believe it's particularly important since I believe that he has a susceptibility or weakness for marijuana and could very well relapse once released.

14. I think these crimes of theft and fraud that he was convicted of in this case started out with him attempting to raise funds to purchase his marijuana and anything that can be done to help him would be greatly appreciated by me.

Dated: 5/11/2020

Marine Mason
Marine Mason

*Exhibit*

*C*

<u>Statement of Margarita Hopkin</u>

The following facts are based upon my personal, first hand knowledge and are true to the best of my knowledge information and belief:

1. I, Margarita Hopkins, I am the sister of Charles Mason but I have only known him since approximately 2012 because we do not share mother only a father.

2. When I realized my father had another son, I was able to reunite with Charles, by that time he was in his teens.

3. At that time, I was living independently and had my own home and after we became reunited he would come to my house on a somewhat regular basis.

4. While Charles had a lot of dreams and ambitions, he seemed to lose focus and motivation due to his constant smoking of marijuana.

5. Since I have known him, he has always smoked marijuana and, in my opinion, it interfered with his ability to do well in school, stay focused on the job or even play basketball, his number one dream.

6. I personally observed him smoking marijuana, but while I would not let him smoke in the house, I did observe him smoke outside my house, and I saw it's effects.

7. Nearly Every time I saw my brother, he was getting high. That is not an exaggeration.

8. While it was "only "marijuana, I do think it impacted his life and contributed to a crime culture because instead of focusing on school or other things that were important, his focus was "the streets "and where he could make his next purchase.

9. In my opinion, my brother would greatly benefit from substance abuse therapy, because I am fearful that upon his release, he may be tempted to resume the lifestyle, particularly now that it is legal, and I have personally witnessed how he overused the substance causing him to lose focus on his goals and what is important.

Dated  5/8/2020

Margarita Hopkins

*Exhibit*

*D*

## Statement of Julia Lamb

The following statement made by me, Julia Lamb, is true to the best of my knowledge and information and belief and is based upon firsthand knowledge:

1. I am the daughter of Marine Mason and Charles Mason is my nephew, my sister's child.

2. At the time of his birth, my sister was addicted to crack cocaine and was in the Wayne County Jail; she was allowed a compassionate release in order to have Charles who was later diagnosed with having cocaine in his system.

3. My mother was granted guardianship over Charles when he was only months old and she raised him in her household, however it was not easy.

4. My nephew had a lot of adjustment problems as he was growing up, and the doctors and counselors advised us that it probably was due to the addiction of his mother to cocaine at the time of his birth.

5. Although I was older and not living with my mother, Marine Mason, for the most time that Charles was being raised, I did stop over to my mothers house at least once a week, about four times a month and was able to see Charles through the years.

6. Beginning in his teenage years, around 17 or 18, I observed him to be high on marijuana all the time; I did not see him personally smoke the marijuana but I could smell it on him and I could see the effects.

7. When he was younger, maybe around 13 or 14, I was aware that he was apprehended by the juvenile authorities for stealing bikes, which I suspected, but couldn't say for sure, that he sold to purchase drugs.

8. When he got older and was in his late teens and early 20s, he was still always high and I believe that he committed these theft and fraud cases that he was charged with here too, in part, pay for his marijuana habit.

9. I believe that because of his history from the time of birth, Charles is pre-disposed to be susceptible to drugs, particular marijuana, and without counseling and treatment, he is surely to relapse upon his release from prison.

10. Our family was relieved when the judge recommended that he get drug treatment and therapy while in prison, but disappointed, when we found out that he was not eligible for this treatment because it was not in his presentence report.

11. As a person who has known Charles all his life, I can attest to the fact that He had a problem with marijuana and that this compulsion contributed, in part, to his involvement in crime.

Dated___5-07-2020___

_J. Lamb_
Julia Lamb

# Exhibit

# E

## Statement of Lamont Mason

The following statement of Lamont Mason is being made freely and voluntarily and is based upon my first hand, direct knowledge:

1. I am the younger brother of Charles Mason, and the facts contained in this statement is true the best of my knowledge, information and belief.

2. I am presently 20 years old and finished high school; Charles is five years older than I am.

3. We were both raised by our grandmother on the west side of Detroit.

4. Being five years younger than my brother, it wasn't until I got a little older that I became aware that he regularly smoked marijuana and used a drug called lean.

5. I later learned that lean is a street drug comprised of mixing cough syrup containing codeine with some type of sweet soda, resulting in the person using it slurring their words and acting very drowsy.

6. Looking back on it, I realize that he appeared that way frequently when I was younger and growing up with him, but I wasn't sure what was wrong with him and I never asked until we were older.

7. I became aware that he was using marijuana because I could smell it on him and noticed that he had blood shot eyes; however, he would not smoke the marijuana in or around my grandmothers home out of respect for her, but she knew he was doing it too.

8. There were times when I was younger and Charles would come home high on marijuana and he had the "munchies "and he had hidden snacks, such as kit kats, under the mattress and when he went looking for them, they were gone because I had discovered them and ate them. He was mad at me.

9. Looking back on it, it seems as though Charles used marijuana a lot and mixed in lean along with it.

10. On a few occasions when he would let me tagalong with him to hang out with his friends, I saw them smoking marijuana; they would call me to go in the other room but I saw them anyway.

11. I think that Charles would benefit from drug rehabilitation because if he's released and goes back to smoking marijuana and using lean, he will have no incentive or ambition to look for work or complete his education.

Dated: 5/25/20

Lamont Mason